UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

**MEMORANDUM OF DECISION**

-against-

06 CR 616 (RJD)

KARUNAKARAN KANDASAMY et al.,

Defendant.
-----------------------------------------------------X
DEARIE, Chief Judge.

Defendant Karunakaran Kandasamy sought release on bail pending the disposition of charges that he conspired to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B. On April 30, 2007, Magistrate Judge Roanne L. Mann entered an order of detention on the grounds that defendant posed a serious risk of flight. On December 10, 2007, this Court heard argument on a renewed bail application. The government opposed on the grounds that defendant presents a serious risk of flight and that no combination of conditions can reasonably assure his presence at trial. The Court denied the application, and the reasons follow.

## BACKGROUND

The government's superseding indictment charges defendant with conspiring with eleven named co-defendants, and others, to provide material support to the Liberation Tigers of Tamil Eelam ("LTTE"), a separatist group in Sri Lanka, which since October 1997 has been designated a foreign terrorist organization by the United States Secretary of State. The government's

complaint and submissions in opposition to the bail request describe defendant as the director of the American branch of the LTTE, operating through a front organization called the World Tamil Coordinating Committee ("WTCC"). Working from the WTTC's office in Queens, New York, defendant allegedly had principal responsibility to oversee fundraising and other activities in the United States on behalf of the LTTE. According to the government, defendant reported directly to the head of the LTTE's International Communications Office in Sri Lanka, coordinated fundraising events in New York, and arranged meetings in Sri Lanka between prominent expatriate donors residing in the United States and the leadership of the LTTE. Significantly, the government further alleges that defendant assisted LTTE members in procuring military weaponry worth millions of dollars, including missiles, firearms, explosives, artillery and radar.

## DISCUSSION

The Bail Reform Act of 1984 expressly authorizes detention pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required . . ." 18 U.S.C. § 3142(e). If the Court concludes that the defendant presents a risk of flight, it must next determine by a preponderance of the evidence whether "there are conditions or combination of conditions which reasonably will assure the presence of the defendant at trial . . ." United States v. Shakur, 817 F.2d 189, 194-95 (2d Cir. 1987). The burden of proof to show that no combination of conditions exists lies with the government. Id. at 195. However, where there is probable cause to believe the defendant has committed an offense enumerated in 18 U.S.C. § 3142(e), the statute creates a rebuttable presumption that *no* combination of conditions will reasonably assure the defendant's appearance. 18 U.S.C. § 3142(e). Federal crimes of

terrorism, including conspiracy to provide material support to designated foreign terrorist organizations, trigger the rebuttable presumption of section 3142(e). Where the presumption of flight applies, the burden of production shifts to defendant, who must then come forward with evidence to rebut. United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986). Although the government retains the burden of persuasion, the "presumption of flight does not vanish from a case when a defendant comes forward with evidence to contradict it." Martir, 782 F.2d at 1146. Instead, it remains a factor to be considered by the Court. See United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991).

Defendant argues that the rebuttable presumption should not apply because conspiracy offenses under 18 U.S.C. § 371 are not enumerated in 18 U.S.C. § 3142(e). However, defendant has not been charged under the general conspiracy statute, but rather under the more specific provision in 18 U.S.C. § 2339B, conspiracy to provide material support to foreign terrorist organizations. A plain reading of 18 U.S.C. § 3142(e) indicates that conspiracy to provide material support triggers the rebuttable presumption. To wit, section 3142(e) includes those offenses "listed in section 2332b(g)(5) of title 18, United States Code . . ." In turn, section 2332b(g)(5) defines federal crimes of terrorism, and includes those offenses described by 18 U.S.C. § 2339B. Finally, section 2339B provides that anyone who "knowingly provides material support or resources to a foreign terrorist organization, or attempts *or conspires to do so*, shall be fined under this title or imprisoned not more than 15 years, or both . . ." 18 U.S.C. § 2339B(a)(1) (emphasis added).

The grand jury indictment establishes probable cause that defendant has committed a federal crime of terrorism, thus triggering the presumption of flight. See Rodriguez, 950 F.2d at

3

87 (noting that indictment established probable cause triggering presumption under § 3142(e)).

The defendant proposes a bail package consisting of a personal recognizance bond of 1.7 million dollars, co-signed by approximately ten individuals. The bond would be secured by four residential properties located in New Jersey with a claimed equity of 1.4 million dollars, plus an additional $300,000 cash provided by three additional sureties. Defendant would submit to home detention with electronic monitoring, surrender his passport, and relocate from his residence near the Canadian border to New York City for the duration of the pre-trial and trial period. To counter the presumption of flight, defendant claims strong community ties, and urges the Court to consider that he did not flee the jurisdiction even though aware for several months that his co-defendants had been arrested for allegedly giving assistance to the LTTE. According to defendant, even had he wanted to flee, he would have nowhere to go, considering that the countries other than Sri Lanka where he has ties—Canada and the United Kingdom—have extradition treaties with the United States. And given the current political climate in Sri Lanka, the government there would never allow safe harbor to a Tamil fugitive.

According to papers supporting his bail application, defendant came to the United States in the 1980's, fleeing Sri Lanka because of governmental oppression of the Tamil minority. He was eventually granted political asylum and became a United States citizen. He has been married to a Canadian citizen for over thirteen years, and together they live near Buffalo, New York, with their nine and eleven year-old daughters. Prior to moving upstate in 2006, defendant lived in New York City for fifteen years, working in restaurants and driving a cab.[1] The government does

---

[1] The rest of his immediate family lives either in Canada—his mother, five brothers and his sister—or the United Kingdom, where one brother lives and works. His father is deceased.

not seriously dispute defendant's characterization of his ties to the United States and his community, saying only that those ties are "limited." Gov't's July 25, 2007, Letter at 3.

The government nonetheless offers compelling reasons to detain defendant pending trial. First, the seriousness of the charges he faces cannot be disputed. A conviction for conspiracy to provide material support to terrorist organizations carries a maximum penalty of fifteen years in prison. If the government adds a substantive material support count, as it credibly suggests it may, defendant faces the possibility of an additional fifteen years' imprisonment. Even with defendant's clean criminal history, the Guidelines recommend a sentence between 360 months to life, capping for the moment at the statutory maximum of fifteen years. In short, he faces very serious charges, the likelihood of a long prison term, and has an incentive to flee.

The charges, if true, demonstrate that defendant has the means to flee as well. Defendant is alleged to be an important and connected member of the LTTE. The LTTE is a sophisticated organization that has been at war with the Sri Lankan government on and off since its founding in the 1970's. It currently controls and de facto governs a significant portion of the country. The LTTE has demonstrated the capacity to wage a determined and effective insurgency, assassinating high-ranking political targets (including a former Indian Prime Minister and a Sri Lankan President), engaging in conventional warfare, and carrying out numerous suicide bombings in Sri Lanka and southern India. To date, the civil war in Sri Lanka has claimed tens of thousands of lives. The LTTE's ability to stand toe-to-toe with the Sri Lankan military stems in part from its sizable resources, collected from a world-wide network of sympathetic Tamil expatriates. Through the coordination of the LTTE's international branches, the expatriate donors help raise money, launder money, and smuggle weapons and equipment into Sri Lanka.

As the alleged director of the American branch, defendant would presumably have access to some portion of those resources and the logistical means to move internationally. In fact, much of the government's proof against defendant comes in the form of documents showing him coordinating meetings between wealthy donors in the United States and LTTE leadership—including the founder and leader of the LTTE, Velupillai Prabhakaran—within LTTE-controlled areas of Sri Lanka. The LTTE clearly has the capacity and resources to support defendant's escape, and a clear incentive to do so.

Much therefore depends on the strength of the evidence against the defendant. Accordingly, the Bail Reform Act requires that the Court consider "the weight of the evidence against the person" when determining bail applications. 18 U.S.C. § 3142(g)(2). The government has thus far proffered significant evidence implicating defendant, none of which defendant has squarely refuted, other than to characterize it as "conclusory." First, the complaint describes defendant as the director of the LTTE's American branch, and has offered persuasive documentary evidence supporting the claim. Copies of documents seized at the WTTC's headquarters indicate that the WTTC office in Queens is indeed the "American branch" of the LTTE,[2] and that defendant serves as the WTTC's "director."[3] The government produces excerpts

---

[2] One of those documents bears the heading "LTTE branches," and includes twelve countries as branches; under the entry for "U.S.A.," it lists the phone and fax numbers of the WTTC's office in Queens. Compl. Gov't's Ex. 1. Another of the proffered documents, found in the WTTC office and translated from Tamil, is entitled "Goals of Foreign Branch Activities." It outlines the duties of branch leaders and directs them to raise money for the LTTE by collecting "substantial amounts from prominent businessmen and rich people" in the Tamil expatriate community. It also directs the branch to "establish contacts with other freedom fighting organizations." Compl. 18-19 (internal quotations omitted)

[3] Translated from Tamil, the government produces a correspondence on LTTE letterhead from Veerakathi Manivannan (also known as "Castro," the purported head of the LTTE's

6

of numerous correspondences between defendant and leaders of the LTTE showing defendant's efforts in fundraising and arranging meetings between LTTE leaders and wealthy expatriates.[4] Consensual recordings made by undercover agents show defendant giving speeches at fundraising events—such as the 2004 "Heroes Day" event, an annual commemoration of Tamil soldiers martyred in the civil war—where he implored Tamil attendees to support LTTE leader Velupillai Prabhakaran and the LTTE's cause. Compl. 24-26. The government further proffers that checks found at the WTTC headquarters had "Heroes Day 2004" written in Tamil in the memo line, and that seized documents show the WTTC purchased propaganda materials from the LTTE which it then sold at the "Heroes Day" event.[5]

Finally, emails show defendant's working relationship with co-defendant Thavajarah Pratheepan, a computer engineer and alleged senior arms procurement agent for the LTTE. A government search of Pratheepan's laptop revealed records documenting the purchase and planned purchase of missiles, radar, anti-aircraft guns, explosives, and other military and so-

---

International Communications Office) to defendant, addressing him as "Director, American Branch." The letter discusses fundraising. Compl. Gov't's Ex. 2

[4]The government produces translated excerpts of ten letters between defendant and LTTE officials discussing prominent donors. In one letter, defendant writes to arrange a meeting with a prominent donor and LTTE leaders because he is "among the people who provide financial support for our struggle for freedom . . . [and] has been working actively on the forefront." Compl. 10. Using bank records and consensually-recorded conversations, the government calculates this individual's donations to the LTTE as more than $1,000,000. Id. at 11-12.

[5]In a February 23, 2005, letter to defendant, Veerakathi Manivannan ("Castro") wrote, "We have been informed that payment of Euros 14,374.22 is due based on publications sent to the American Branch by the Publications Division in 2004." Compl. 27. The government proffers that an attached invoice details the items purchased, including: twenty-five LTTE flags, 150 copies of a CD about the LTTE navy entitled "Black Sea Tigers," and 500 copies of a book distributed at the 2004 "Heroes Day" functions, entitled "Children of the Sun." Compl. 27-28.

7

called "dual-use" technology. Excerpts from emails proffered by the government show that WTTC officers arranged a meeting with Pratheepan and an associate professor in Computer Sciences and Computer Engineering of an American university, the professor further describing himself as a former "co-principal investigator for a Missile Defense Agency." Compl. 30. This individual connects defendant and the WTTC office to Pratheepan in an email to Pratheepan, where he writes,

> [w]e sent some technical books through [defendant]. He said that he gave it to two different people going over there, to hand it over to you through the international relations office [in Sri Lanka]. [Defendant] called me back about three weeks back and said that one batch had already been given, and the other was on the way through someone going over to your place. . . . There were many technical books in many areas including digital signal processing, and signals and systems.

Id. at 31. In sum, the government has offered strong evidence indicating defendant's efforts on behalf of the LTTE, and, through his directorship in the United States, his close working relationship with the organization's highest ranking members.

The government also casts substantial doubt on the proposed conditions of release. Of the approximately ten suretors offered by defendant, four of them are among those named in the complaint as prominent financial supporters of the LTTE. As well-connected donors to the organization, these individuals do not present as satisfactory candidates to assure defendant's presence for trial.[6] In addition, as other courts in this district have noted, monitoring systems

---

[6]Defendant challenges the government's criticism, describing the proposed suretors as productive members of society who forcefully, but lawfully, disagree with the Sri Lankan government's treatment of ethnic Tamils in Sri Lanka. If they had materially supported the LTTE, defendant argues, the government would have charged them with a crime. However, the mere fact that the government has not indicted these individuals does not necessarily recommend their suitability as suretors. Given that several of them appear in the documents that constituted persuasive preliminary evidence against defendant, the Court finds that this same evidence calls

alone cannot reasonably assure the appearance of a defendant. See, e.g., United States v. Benatar, 2002 U.S. Dist. LEXIS 20582, at **7-8 (E.D.N.Y. Oct. 10, 2002) (citing United States v. Gotti, 776 F. Supp. 666, 673 (E.D.N.Y. 1991). The bail conditions presented to the Court regarding the financial proposals and physical restrictions therefore fall far short of reasonably assuring defendant's presence at trial, particularly considering the statutory presumption of flight. Compare United States v. Orena, 986 F.2d 628, 632-33 (2d Cir. 1993) (reversing order of pretrial release where proposed conditions of home confinement could not overcome statutory presumption of detention) with United States v. Sabhnani, 493 F.3d 63, 77-78 (2d Cir. 2000) (vacating order of detention where crime did not trigger statutory presumption of detention and proposed physical restrictions were "extraordinary").

## CONCLUSION

Given the extended pre-trial period, and the Court's strong preference for release, defendant's proposal is taken very seriously. Unlike many of his co-defendants in this case and the companion case, defendant is a naturalized American citizen with some ties in the United States. He is married to a Canadian citizen and now lives in the Buffalo area, near the Canadian border. Despite the Court's strong preference for pre-trial release, after careful consideration, the Court has determined that defendant's bail application must be denied. Certainly, defendant faces a significant sentence if convicted. The weight of the evidence suggests that defendant is an important and connected member of a sophisticated terrorist organization with a substantial international presence—as the documents indicate, he is the director of the LTTE's American

---

into question their fitness as suretors.

9

branch. Several of his proposed suretors have been linked to that network. In short, this case presents the very reasons for which Congress established the presumption that federal crimes of terrorism create a risk of flight. Defendant's forceful and articulate presentation failed to counter that presumption or otherwise convince the Court that the conditions proffered will reasonably assure defendant's presence for trial.

SO ORDERED.

Dated: Brooklyn, New York
       July 3, 2008

                                        RAYMOND J. DEARIE
                                        United States District Judge